**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOBBI-JO SMILEY, AMBER BLOW** | : | **No. 3:12cv2380** |
| **and KELSEY TURNER,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **E.I. DU PONT DE NEMOURS AND** | : | |
| **COMPANY and ADECCO USA, INC.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is defendants' motion for summary judgment. (Doc. 112). This motion is fully briefed and ripe for disposition.

## BACKGROUND

The instant federal and state wage and hour action arose from Plaintiffs Bobbi-Jo Smiley, Amber Blow and Kelsey Turner's (collectively "plaintiffs") employment with E.I. du Pont de Nemours and Company and Adecco U.S.A., Inc. (collectively "defendants").

Defendants employ hundreds of hourly workers at DuPont's manufacturing plant in Towanda, Pennsylvania (hereinafter "Towanda Plant"). (Doc. 112-6, Defs.' Statement of Undisputed Facts (hereinafter "SOF") ¶ 1).[1] Plaintiffs were assigned to work twelve-hour shifts from 6:30 a.m./p.m. to 6:30 p.m./a.m. (Id. ¶ 2). During their twelve-hour shift,

---

[1]Adecco employs hourly contract employees at DuPont's Towanda Plant. (SOF at 1).

defendants compensated plaintiffs for three, thirty-minute meal periods.

(Id. ¶ 4; Doc. 112-3, Ex. E, Break/Lunch Period Policy revised 11/09/2001

(hereinafter "Break Policy") at 1; Doc. 112, Ex. A, Dep. of Kelsey Turner

(hereinafter "Turner Dep.") at 56; Ex. B, Dep. of Bobbi-Jo Smiley

(hereinafter "Smiley Dep.") at 74-76, 84-86, 91-92; Ex. C, Dep. of Amber

Blow (hereinafter "Blow Dep.") at 72-73).

Plaintiffs claim that defendants required them to work, without pay,

before and after their twelve-hour shift.  First, defendants directed plaintiffs

to be in their areas before their regularly-scheduled start time to provide

"shift relief."[2]  (SOF ¶ 3).  Second, defendants required plaintiffs to be

present at the facility before and after their scheduled shifts to put on and

take off (don and doff) uniforms and protective gear.  (Id. ¶ 4).

Accordingly, plaintiffs filed the instant lawsuit on November 28,

2012, and an Amended Complaint on March 15, 2013.  In their Amended

Complaint, plaintiffs allege claims under the Fair Labor Standards Act

(hereinafter "FLSA") and Pennsylvania's Wage Payment and Collection

Law (hereinafter "WPCL").  Specifically, plaintiffs seek to recover overtime

---

[2]  "Shift relief" consists of the outgoing shift sharing information with the oncoming shift about the status of their work, before the regularly-scheduled start time of the oncoming shift.  (SOF ¶ 3).

compensation for donning and doffing their uniforms and protective gear

and performing shift relief before and after their regularly-scheduled shifts.

At the conclusion of discovery, defendants filed a joint motion for

summary judgment.  (Doc. 112).  The parties then briefed the issues

bringing the case to its present posture.

**JURISDICTION**

The instant suit is brought under the FLSA, which provides that suits

"may be maintained against any employer . . . in any Federal or State

court of competent jurisdiction . . . ." 29 U.S.C. § 216(b).  Accordingly, the

court has federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.").  The court has

supplemental jurisdiction over plaintiffs' state law claims pursuant to 28

U.S.C. § 1367(a).

**LEGAL STANDARD**

Granting summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.

See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its

4

pleadings, and designate specific facts by the use of affidavits,

depositions, admissions, or answers to interrogatories demonstrating that

there is a genuine issue for trial.  Id. at 324.

**DISCUSSION**

Defendants' motion for summary judgment presents three issues:

First, defendants argue that the FLSA allows them to use paid non-work

time to offset unpaid work time.  Second, plaintiffs are not owed any

overtime compensation because the amount of paid non-work time

exceeds unpaid work time.  Third, defendants ability to offset does not

expose them to additional liability under the FLSA.  The court will

addresses these issues *in seriatim*.

**I.  Offset**

Defendants contend that the FLSA allows them to use paid non-

work time to offset unpaid work time.  Specifically, defendants paid

plaintiffs for three thirty-minute *bona fide* meal periods, which are not

considered work time under the FLSA.  29 C.F.R. § 785.19.  Defendants

assert that this paid non-work meal period time can be used to offset

plaintiffs' unpaid donning and doffing and shift relief time.  Plaintiffs argue

that offsetting their donning and doffing and shift relief time with the paid

meal periods misallocates agreed upon wages in contravention of the FLSA. As this issue turns on interpreting the FLSA, the court begins by laying out the controlling provisions of the statute.

### A. The FLSA

The Supreme Court has stated that "[t]he central aim of the [FLSA] was to achieve . . . certain minimum labor standards." Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960). To accomplish this goal, "[t]he FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, —U.S.—, 133 S. Ct. 1523, 1527 (2013).[3]

Under the FLSA, covered employers may not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[4] The FLSA "provides that 'employee' generally means 'any

---

[3] The provisions of the FLSA requiring an employer to pay its employees a specified minimum wage for work performed, 29 U.S.C. § 206, are not at issue in the instant case.

[4] In full, section 207(a)(1) provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any

individual employed by an employer,' and, in turn, provides that to 'employ' is 'to suffer or permit to work.'" Sandifer v. U.S. Steel Corp., —U.S.—, 134 S. Ct. 870, 875 (2014) (quoting 29 U.S.C. §§ 203(e)(1) and 203(g)).

Additionally, "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e) (hereinafter "section 207(e)").  The regular rate, however, "shall not be deemed to include . . . payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work or other similar cause[.]"  29 U.S.C. § 207(e)(2).  The Third Circuit Court of Appeals has held that the phrase "shall not be deemed" means "that employees seeking unpaid overtime may not under the FLSA require that non-work pay be added to the regular rate."  Wheeler v. Hampton Twp.,

---

workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

399 F.3d 238, 243-44 (3d Cir. 2005).

The FLSA does not expressly grant employers permission to use paid non-work time to offset unpaid work time.  Rather, the statute and interpreting cases preclude offsetting in two ways.  First, employers cannot use paid non-work time to offset unpaid work time when the paid non-work time is excluded from the regular rate of pay.  Second, if the parties agree to treat paid non-work time as "hours worked," and this time is included in the regular rate of pay, the employer cannot offset.  As such, defendants cannot offset if either of the above apply.

### 1.  Statute precludes offset

The FLSA expressly precludes an employer from using paid non-work time to offset unpaid work time when the paid non-work time is excluded from the regular rate of pay.  The FLSA provides that:

> (1) Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward . . . overtime compensation required under this section.

> (2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. § 207(h).  Thus, defendants cannot offset if the FLSA expressly

excludes plaintiffs paid meal periods–non-work time–from plaintiffs'
regular rate of pay.

The FLSA excludes specific payments from an employee's regular
rate of pay.  "Where payment is ostensibly made as compensation for . . .
hours . . . not regarded as working time under the [FLSA], the payment is
nevertheless included in the regular rate of pay unless it qualifies for
exclusion . . . ."  29 C.F.R. § 778.223.  Section 207(e) lists several
categories of compensation which are excluded from the regular rate of
pay.  Here, the only category arguably implicated is found in section
207(e)(2).  Section 207(e)(2) excludes from the regular rate any
"payments made for occasional periods when no work is performed due to
vacation, holiday, illness, failure of the employer to provide sufficient work,
or other similar cause . . . ."  29 U.S.C. § 207(e)(2).[5]

---

[5]  In full, section 207(e)(2) states:

> As used in this section the "regular rate" at which an
> employee is employed shall be deemed to include all
> remuneration for employment paid to, or on behalf of, the
> employee, but shall not be deemed to include–
>
> (2) payments made for occasional periods when no
> work is performed due to vacation, holiday, illness,
> failure of the employer to provide sufficient work, or
> other similar cause; reasonable payments for traveling

The federal regulations pertaining to this issue, however, clearly establish that the payments for plaintiffs' regular *bona fide* meal periods do not fall under the section 207(e)(2) exclusion.  The exclusion "deals with the type of absences which are infrequent or sporadic or unpredictable.  It has no relation to regular 'absences' such as lunch periods."  29 C.F.R. § 778.218(b).  "The term 'other similar cause' refers to payments made for periods . . . [such as] absences due to jury service, reporting to a draft board, attending a funeral," and the like.  29 C.F.R. § 778.218(d).  "Only absences of a nonroutine character which are infrequent or sporadic or unpredictable are included in the 'other similar cause' category."  Id.  Accordingly, section 207(e)(2) does not prohibit defendants from including plaintiffs' meal period time in their regular rate of pay, rendering section 207(h)'s prohibition against offset inapplicable.

---

expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

29 U.S.C. § 207(e)(2).

### 2.  Agreement precludes offset

Second, if the parties agree to treat paid non-work time as "hours worked," and this time is included in the regular rate of pay, the employer cannot offset.  The Ninth Circuit Court of Appeals has issued the lead opinion on this issue.  In <u>Ballaris v. Wacker Siltronic Corp.</u>, 370 F.3d 901 (9th Cir. 2004), the Ninth Circuit held that the FLSA requires an employer to pay an employee for all **agreed-upon compensation**.[6]  "Even without section 7(h), we emphasize that it would undermine the purpose of the FLSA if an employer could use **agreed-upon compensation** for non-work time (or work time) as a credit so as to avoid paying compensation required by the FLSA."  <u>Ballaris</u>, 370 F. 3d at 914. (emphasis added).

The implementing regulations support this conclusion.  The

---

[6]  Initially, the Ninth Circuit noted that the parties agreed to exclude the meal period payments from the employee's regular rate of pay under section 207(e)(2). <u>Ballaris</u> 370 F. 3d at 909.  Thus, the <u>Ballaris</u> court held, as discussed above, that section 207(h) precluded using the meal period payments as a credit.  <u>Id.</u> at 913.  The instant case is distinguishable because, unlike the parties in <u>Ballaris</u>, the undisputed evidence establishes that the defendants **included** the meal break payments in plaintiffs' regular rate of pay.  (Doc. 143, N.T. 8/28/14 at 9, 16; SOF ¶ 4; Doc. 121-1, Ex. 12, Dep. of Gregory Allen Saufley (hereinafter "Saufley Dep.") at 17-21; (Doc. 121-1, Ex. 13, Dep. of Annette Phifer (hereinafter "Phifer Dep.") at 81-84; Doc. 119-2, Ex. 9 Bobbi-Jo Smiley pay stub at 12-13; Doc. 119-2, Ex. 10, Amber Blow pay stub at 15-16; Doc. 119-2, Ex. 11, Kelsey Turner pay stub at 18-19).

regulations establish that "time spent in eating meals between working hours" may or may not constitute "hours worked," for purposes of determining an employee's work week, "depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked."  29 C.F.R. § 778.320.  Absent such agreement, *bona fide* meal periods are not "hours worked" under the FLSA.  <u>See</u> 29 C.F.R. § 785.19 ("*Bona fide* meal periods are not work time.").

The FLSA does not define the term "work."  <u>Sandifer</u>, 134 S. Ct. at 875; 29 U.S.C. § 203 ("Definitions").  In 1944, the Supreme Court defined "work" as meaning "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  <u>Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590, 598 (1944).  The same year, the Supreme Court clarified that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA.  <u>Armour & Co. v. Wantock</u>, 323 U.S. 126, 133 (1944).[7]  "An employer, if he chooses,

---

[7] In response to the Supreme Court's expansive definition of work, Congress enacted the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-62. The Portal-to-Portal Act, however, did not change <u>Tennessee Coal</u> and <u>Armour</u>'s definitions of work.  <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21, 28 (2005).

may hire a man to do nothing, or to do nothing but wait for something to happen." Id.

In the instant case, plaintiffs first contend that the parties agreed to treat their meal periods as "hours worked" because the meal periods were paid. If defendants had intended to exclude the meal period time from "hours worked," defendants would have a policy indicating such or employee's time cards would indicate that the meal period hours are not "hours worked." The court disagrees.

Plaintiffs' conclusion may have been appropriate under the version of 29 C.F.R. § 778.320 (hereinafter "section 778.320")) that was in effect prior to January 23, 1981. As explained in a Federal Register notice serving as a preamble to the regulatory amendments that became effective on that date, "[o]ld section 778.320 very strongly implied that payment for time spent in the specified activities would almost invariably convert them into hours worked." 46 FED. REG. 7308 (Jan. 23, 1981).

The more recent version of section 778.320, however, was expressly designed "to **avoid** the implication that payment for time

Rather, the Portal-to-Portal Act provided an exception for preliminary and postliminary activities. Id. at 26-30. Because plaintiffs' meal periods are not preliminary or postliminary activities, the Portal-to-Portal Act does not apply to whether plaintiffs' meal periods are "hours worked."

devoted to the specified activities converts them, virtually without

exception, into hours worked." Id. (emphasis added).  Instead, the new

section 778.320 expressly states that whether or not payment converts the

activities into hours worked depends on "whether or not it appears from all

the pertinent facts that the parties have agreed to treat such time as hours

worked."  29 C.F.R. 778.320.  Therefore, plaintiffs' meal period time is not

considered "hours worked" simply because it is paid.  Rather, the court

must determine whether the parties have **agreed** to treat this time as

"hours worked."  After careful review, the court is aware of no agreement

in this case.

     While no court within the Third Circuit has directly addressed this

issue, district courts outside of the Third Circuit Court of Appeals have

looked to the parties' collective bargaining agreement to ascertain whether

the parties agreed to treat meal period time as "hours worked." See Scott

v. N.Y.C., 592 F. Supp. 2d 386, 408 (S.D.N.Y. 2008) (finding that the

collective bargaining agreement's silence on the issue of whether meal

periods were "hours worked" evinces an agreement to treat meal periods

as "hours worked" because "it is counterintuitive to presume that the

repeated and contentious contract negotiations between the NYPD and

collective bargaining agents failed to take into account this policy decision [in the parties' collective bargaining agreement]."); O'Brien v. Town of Agawam, 440 F. Supp. 2d 3, 12-13 (D. Mass. 2006) (holding that the parties' collective bargaining agreement explicitly defined "hours of work" to include time allegedly spent on meal breaks); Harris v. City of Boston, 253 F. Supp. 2d 136, 145-46 (D. Mass. 2003) (stating that the analysis of whether lunch periods are considered "hours worked" turns on "whether the parties explicitly acknowledged in the [collective bargaining agreement] that the plaintiffs were being compensated for 'hours worked,' not whether the lunch payment is compensation."); O'Hara v. Menino, 253 F. Supp. 2d 147, 157-59 (D. Mass. 2003) (noting that the meal period time was not "hours worked" because the collective bargaining agreement did not expressly require that plaintiffs' meal periods be treated as "hours worked.").

The undisputed evidence establishes that plaintiffs are non-union employees.  (Doc. 143, N.T. 8/28/14 at 18).  Thus, plaintiffs do not have a collective bargaining agreement defining whether their meal periods are "hours worked."  Instead, plaintiffs' assert that defendants' meal period policy found in the employee handbook is the agreement, which converted

plaintiffs' meal period time into "hours worked."[8]

The Third Circuit Court of Appeals has recognized that in Pennsylvania, an employee handbook "only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 115 (3d Cir. 2003) (quoting Jacques v. AKSO Int'l Salt, Inc., 619 A.2d 748, 753 (Pa. Super. Ct. 1993)).  Similarly, "'[a] written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it if under all of the circumstances, the parties manifest an intent that it become a legally binding contract.'"  Henderson v. Merck & Co., 998 F. Supp. 532, 538 (E.D. Pa. 1998) (quoting Curran v. Children's Serv. Ctr., 578 A.2d 8, 10 (Pa. Super. Ct. 1990)).

In the instant matter, plaintiffs have failed to establish that defendants affirmatively indicated that their meal period policy would be construed as a contract or agreement to convert the meal period time into "hours worked."  Plaintiffs argue that the meal period policy, in addition to the fact that defendants did not have a separate offset policy, created a

---

[8]  Defendants' meal period policy states that twelve-hour shift employees required to make shift relief "will be paid for their lunch time as part of their scheduled work shift."  (Doc. 112-3, Break Policy at 27-28).

16

contract, which included the paid meal periods as "hours worked." (Saufley Dep. at 20; Phifer Dep. at 81).  Defendants' failure to have a separate offset policy, however, is not tantamount to an affirmative and unequivocal intent to be legally bound by the provisions in their handbook or meal period policy.  As such, the defendants' meal period policy is not an agreement, which converted plaintiffs' paid meal period time into "hours worked" as a matter of law.

Finally, a review of all the pertinent facts further demonstrates that the parties have not agreed to treat plaintiffs' meal period time as "hours worked."  Specifically, plaintiffs and defendants **agree** that the meal periods are *bona fide*, and therefore, not "hours worked" under the FLSA's meal period regulation, 29 C.F.R. § 785.19.  (Doc. 143, N.T. 8/28/14 at 3). Moreover, plaintiffs have failed to establish that the time spent during their meal periods predominantly benefitted defendants.[9]

---

[9]  While the Third Circuit Court of Appeals has not yet identified the test to determine whether an employee's meal period is *bona fide*, and therefore not "hours worked" under the FLSA, district courts within this circuit have determined that the "predominantly for the benefit of the employer" test is consistent with the traditional principles underlying the FLSA.  See  Lugo v. Farmer's Pride Inc., 802 F. Supp. 2d 598, 613 (E.D. Pa. 2011) (citing cases from the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh Circuit Courts of Appeals holding that the appropriate test for determining whether meal periods are compensable

Pursuant to the predominant benefit test, "a meal period . . . is compensable if an employee is perform[ing] activities predominantly for the benefit of the employer." Lugo v. Farmer's Pride Inc., 802 F. Supp. 2d 598, 613 (E.D. Pa. 2011) (internal quotation marks omitted).  In the instant case, plaintiffs have failed to establish that they performed activities during their meal periods that predominantly benefitted defendants.  Plaintiffs were not assigned job-related duties to perform during their meal periods. Plaintiffs did not have to attend mandatory meetings or trainings over their meal periods.  Plaintiffs' meal periods were rarely interrupted.  In fact, plaintiffs were only called back early once or twice a year.  (SOF ¶ 15, 40). Accordingly, a review of all pertinent facts establishes that plaintiffs' meal periods did not predominantly benefit defendants, and therefore, are not "hours worked" under the FLSA.

Plaintiffs rely on a recent case from the Southern District of Indiana to enhance their contention that the plaintiffs and defendants had an express or implied agreement to treat their meal period time as "hours

---

and therefore hours worked, is whether the meal period is used predominantly for the benefit of the employer or for the benefit of the employee); Babcock v. Butler Cnty., No. 12-CV-394, 2014 WL 688122, at *5 (W.D. Pa. Feb. 21, 2014) (same); Aboud v. City of Wildwood, Civ. No. 12-7195, 2013 WL 2156248, at *6 (D.N.J. May 17, 2013) (same).

worked."  In <u>Jones v. C & D Tech., Inc.</u>, unionized employees claimed the FLSA required their employer to treat their twenty-minute lunch break as "hours worked."  8 F. Supp. 3d 1054, 1066-67 (S. D. Ind. 2014).   The court agreed for two reasons.

First, the court determined that the twenty-minute lunch breaks were actually rest, not meal periods.  <u>Id.</u> at 1067.  Thus, the twenty minutes were "hours worked" under the FLSA's rest period regulation, not the meal period regulation.  <u>See</u> 29 C.F.R. §  785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. . . .  They must be counted as hours worked.").  Second, and relevant to the instant case, the court noted that the parties **had an agreement** to treat the lunch breaks as "hours worked."  <u>Jones</u>, 8 F. Supp. 3d at 1067-69.  Specifically, the plaintiffs, members of a labor union, had an express agreement stating that the twenty-minute lunch break would be "hours worked."  <u>Id.</u> at 1068.

<u>Jones</u> is distinguishable for two reasons.  First, in the instant case, the parties agree that plaintiffs' three thirty-minute breaks are meal periods, not rest periods.  (Doc. 143, N.T. 8/28/14 at 3).  Therefore, the FLSA's rest period regulation, which requires that periods of short duration

19

are "hours worked," does not apply.  Second, plaintiffs are non-unionized employees and do not have a collective bargaining agreement providing for the inclusion of their meal periods as "hours worked."  Accordingly, Jones fails to support plaintiffs' assertion that the parties had an express or implied agreement to convert plaintiffs' paid non-work meal period time into "hours worked."

In sum, the FLSA's prohibitions against offsetting are inapplicable to the instant case.  First, defendants included plaintiffs' non-work meal period pay in plaintiffs' regular rate of pay because section 207(e)(2) does not expressly exclude plaintiffs' meal period pay from the regular rate.  As such, section 207(h)'s prohibition against using paid non-work time to offset unpaid work time does not apply because defendants included the non-work time pay in plaintiff's regular rate of pay.

Second, plaintiffs have failed to establish that the parties had an agreement to treat the paid non-work time meal periods as "hours worked."  Defendants did not convert plaintiffs meal period time into "hours worked" merely because this time was paid.  Further, plaintiffs do not have a collective bargaining agreement providing that the meal period time is "hours worked."  Moreover, defendants' meal period policy did not

create a contract, express or implied, which converted plaintiffs' meal period time into "hours worked."  Finally, plaintiffs agree, and their conduct establishes, that their meal periods were *bona fide* and not spent for the predominant benefit their employer.  Ergo, the FLSA does not expressly preclude defendants from offsetting plaintiffs unpaid donning and doffing and shift relief time with the paid meal period time.

## B.  Cases

Having determined that the FLSA does not expressly prevent defendants from offsetting, the court next looks to cases addressing defendants' offset argument.  The court can find, and the parties have identified, no precedent binding on this court regarding whether defendants may offset plaintiffs' donning, doffing and shift relief activities with paid, *bona fide*, meal periods.  A review of cases from the Courts of Appeals that have addressed this argument, however, allow for an offset.

The Seventh Circuit Court of Appeals addressed the issue of offsetting paid meal periods against other compensable time in <u>Barefield v. Village of Winnetka</u>, 81 F.3d 704, 707 (7th Cir. 1996).  In <u>Barefield</u>, thirty-five (35) current and former police officers and civilian dispatchers filed an FLSA action seeking overtime pay for time spent in roll call prior to

their shifts.  Id. at 707-09.

   The district court determined at summary judgment that the FLSA did not require defendant to pay plaintiffs overtime for 15-minute roll call periods prior to beginning their shifts and the Seventh Circuit affirmed.  Id. at 711.  To reach this determination, the Seventh Circuit held that plaintiffs' meal periods were *bona fide* because plaintiffs did not spend that time predominantly for the benefit of the defendant.  Id. at 710-11. The only restriction on plaintiffs' meal period "was [plaintiffs] had to remain in the police department building or in radio contact with the building in case of an emergency."  Id. at 710.  As such, "the meal periods are not compensable [hours worked] under the FLSA and [defendant] may properly offset the meal break against the compensable roll call time worked by plaintiffs."  Id.

   Similarly, the Eleventh Circuit held in Avery v. City of Talladega, that an employer could offset a paid *bona fide* meal period against other compensable time.  24 F.3d 1337, 1344-47 (11th Cir. 1994).  The Eleventh Circuit first applied the predominant benefit test and determined that "[n]o reasonable jury could find that the plaintiffs' meal periods generally are spent predominantly for the benefit of the [defendant]."  Id. at

1347.  Thus, the Seventh Circuit affirmed the district court's determination at summary judgment that defendant's decision to offset compensable pre-shift and post-shift work time did not violate the FLSA.  Id.

Here, the parties agree that the meal periods are *bona fide*, and therefore, not work time under the FLSA's meal period regulation, 29 C.F.R. § 785.19.  (Doc. 143, N.T. 8/28/14 at 3).  Further, the parties agree that defendants included the meal period payments in plaintiffs' regular rate of pay.  (Doc. 143, N.T. 8/28/14 at 9, 16; SOF ¶ 4; Saufley Dep. at 17-21; Phifer Dep. at 81-84; Doc. 119-2, Ex. 9 Bobbi-Jo Smiley pay stub at 12-13; Doc. 119-2, Ex. 10, Amber Blow pay stub at 15-16; Doc. 119-2, Ex. 11, Kelsey Turner pay stub at 18-19).  Moreover, as previously discussed, the FLSA does not expressly preclude defendants from offsetting plaintiffs unpaid donning and doffing and shift relief work time with the paid meal period non-work time.  Therefore, the court will follow the decisions of the Seventh and Eleventh Circuits and find that defendants may offset plaintiffs' unpaid donning and doffing and shift relief time with their paid meal period time.  Accordingly, the court will grant defendants' motion for summary judgment on the offset issue.

**II. Plaintiffs Are Not Owed Any Additional Compensation**[10]

The court next addresses whether defendants owe plaintiffs any

additional money after offsetting the paid meal periods against unpaid

donning, doffing and shift relief.  In the instant case, the undisputed record

establishes that defendants paid plaintiffs for twelve hours each shift at

their regular (or overtime) rate of pay, and plaintiffs worked fewer than

twelve hours.  Specifically, plaintiffs' deposition testimony establishes that

the time spent donning and doffing and performing shift relief is less than

the amount of time plaintiffs spent on paid meal periods.  (Turner Dep. at

56, 68, 69-71, 81, 85-86, 91; Smiley Dep. at 64-65, 71-76, 82-86, 91-92;

Blow Dep. at 29, 55-56, 64-67, 72-73; Bashore Decl. at ¶¶ 5-7).

For example, Plaintiff Turner testified that when she worked in

building B10, the time she spent performing compensable activities

outside her regularly-scheduled shift added up to about twenty-eight

minutes.[11]  (Turner Dep. at 68-71, 91, 85-86).  This is sixty-two fewer

---

[10]  Both parties agree that shift relief is a compensable activity.  The parties, however, dispute whether donning and doffing personal protective equipment is a compensable activity.  The court assumes, without deciding, that plaintiffs' donning and doffing of personal protective equipment are compensable activities under the FLSA.

[11]  It took Plaintiff Turner about five minutes to put on her uniform and safety shoes, retrieve her safety glasses, and walk to the B10 area.  (SOF

minutes than the amount of paid meal periods each shift.  (Id. at 56).

Similarly, when Plaintiff Turner worked in Building 41, donning and doffing

and shift relief took approximately twenty-five minutes—sixty-five fewer

minutes than the amount of paid meal periods during her shift.  (Id. at 69,

84).[12]

   While working in the 9 Slitter building, Plaintiff Smiley spent twenty-

five minutes donning and doffing her personal protective equipment and

performing shift relief.  (Smiley Dep. at 64-65, 70-76).  Plaintiff Smiley

always received at least one thirty-minute paid meal period.  (SOF ¶ 25).

Thus, the maximum unpaid compensable time, twenty-five minutes, is less

than the paid non-compensable time—thirty minutes.  Likewise, when

Plaintiff Smiley worked in B10, she spent thirty-five minutes donning and

doffing her uniform and conducting shift relief.  (Smiley Dep. at 78, 80-83,

122).  She received at least sixty minutes of paid meal periods when

working in this area.  (Id. at 84-86, 91-92).  Therefore, the paid meal

---

¶ 9).  At the end of the shift, the same process in reverse took her eight
minutes.  (Id. ¶ 11).  Generally, shift relief lasted five to fifteen minutes.
(Id. ¶ 13).

   [12]  Plaintiff Turner testified that she spent thirty seconds in the air
shower and spent around five minutes getting out of the air shower and
changing out of her clean room uniform.  (SOF ¶ 12).  Generally, the
maximum time for shift relief was fifteen minutes.  (Id. ¶ 13).

periods are at least twenty-five minutes more than the time she spent performing unpaid offline activities.

Finally, Plaintiff Blow has been completely compensated for the time she spent working in building B10.  Plaintiff Blow received three thirty-five-minute paid meal period breaks.  (SOF ¶ 39).  Plaintiff Blow spent fifty-five minutes donning and doffing her personal protective equipment and performing shift relief.[13]  (Id. ¶¶ 33-38).  This time for donning and doffing is fifty fewer minutes than the amount of time that Plaintiff Blow spent on paid meal periods.  As such, Plaintiff Blow is not entitled to any additional compensation.

Viewing the evidence in the light most favorable to plaintiffs, the undisputed material facts establish that defendants paid plaintiffs for twelve hours each shift.  The plaintiffs in all cases worked fewer than twelve hours.  Thus, the defendants can completely offset the plaintiffs' unpaid donning and doffing and shift relief activities with plaintiffs' paid meal periods.  Accordingly, the court will grant defendants' motion for summary judgment.

---

[13]  Plaintiff Blow got in uniform no later than 6:10 and could be at the floor for shift relief at 6:15.  (SOF ¶ 35).  Rarely, she could spend thirty minutes beyond her regularly-scheduled shift performing shift relief.  (Id. ¶ 30).

## III. Post Lawsuit Reassignment of Wages

Finally, plaintiffs argue that defendants are liable under the FLSA for unlawful post-lawsuit reassignment of wages.  Plaintiffs assert that a successful offsetting defense inevitably leads to defendants' alternative liability under the FLSA for unpaid wages, including overtime, owed to plaintiffs.  The alternative claims are premised upon defendants' post-litigation decision to re-cast prior wage payments actually made to plaintiffs for meal periods as, instead, mere down payments which the defendants now hope to re-allocate in order to satisfy their FLSA obligations to pay plaintiffs and the class members for time spent donning and doffing and performing shift relief.

In response, defendants argue that plaintiffs alternative claims are simply an argument in response to defendants' offset theory.  They assert that plaintiffs have been paid for all "hours worked" under the FLSA.

The court will find that defendants are not liable under the FLSA for any post-lawsuit reassignment of wages.  Because defendants are allowed to offset the unpaid donning and doffing and shift relief time with the paid meal period time, they have compensated plaintiffs for all "hours worked."  The plaintiffs were paid for twelve-hours each shift even though

in all cases plaintiffs worked fewer than twelve hours.

**CONCLUSION**

For the reasons stated above, the court will grant defendants' joint motion for summary judgment.  First, the FLSA allows defendants to use paid non-work time to offset unpaid work time.  Second, plaintiffs are not owed any additional or overtime compensation because the amount of paid non-work time exceeds paid work time.  Finally, defendants ability to offset does not expose them to additional liability under the FLSA.  An appropriate order follows.

Date:  11/05/14                            s/ James M. Munley
                                           **JUDGE JAMES M. MUNLEY**
                                           **United States District Court**